[Civ. No. 9481.   First Appellate District, Division Two.—February 19, 1935.]

FRUIT GROWERS SUPPLY COMPANY (a Corporation), Respondent, v. O. P. M. GOSS et al., Defendants; GLOBE INDEMNITY COMPANY (a Corporation), Appellant.

652

Hadsell, Sweet, Ingalls & Lamb for Appellant.

Francis W. Murphy for Respondent.

NOURSE, P. J.—The plaintiff sued for the cost to it of labor and materials furnished defendant Goss in connection with a contract entered into between plaintiff and said defendant, the faithful performance of which was the condition of a bond executed by the defendant Globe Indemnity Company. Plaintiff had judgment for $4,332.02 with interest and costs and the surety company appeals.

On February 11, 1929, the first draft of the contract between plaintiff and defendant Goss was drawn up, providing for the remodeling by Goss of three lumber kilns with certain specifications and guaranties. On this same date Goss obtained the bond from the surety in the sum of $5,000. The final draft of the contract was dated March 16, 1929.

Plaintiff claims and the lower court found that Goss failed in the following details, all of which were covered in the contract: (1) he did not furnish labor and materials; (2) he gave the job his personal supervision only to a limited extent; (3) he did not remodel one of said kilns within four months of the signing of the contract; (4) he did not remodel any kiln to the satisfaction of the supply company; (5) he did not remodel any kiln in accordance with the guaranties as to successful operation; and (6) he did not pay the company the cost to it of labor and materials, having not completed a kiln to its satisfaction.

As its first and main defense appellant quotes from the bond: "That the surety shall not be liable . . . for the non-performance of any guarantees of the efficiency . . . of any work done or materials furnished." It then contends that the breach of contract was not a failure in construct-

ing the kiln according to the plans and specifications, but was the failure of the kiln, as so constructed, to meet the guaranties of efficiency. But it is admitted that the kiln was not satisfactory, whereas the contract provided: "Said second party hereby agrees to remodel one of said dry kilns within the period of four (4) months from and after the date of this contract, to the satisfaction of said first party *and* in accordance with the following guarantees . . . " Also that the contractor would reimburse the supply company for expense of labor and materials "in the event that said first kiln shall not, when remodeled as aforesaid, operate to the satisfaction of said first party, . . . " Respondent argues that to hold that merely because of the presence of guaranties in the contract the surety company is not to be held for the unsatisfactory nature of the kiln is to make the bond void and meaningless. It is also brought out that beside the breach of contract in regard to guaranties and satisfaction, Goss failed in four other respects—one, two, three and six above—all of which respondent claims are in breach of contract and covered by the bond.

The bond undertook to indemnify the supply company against loss directly caused "by the failure of the principal to faithfully perform said contract . . . " ▇ The trial court found a failure to perform in six particulars. Appellant concedes that the kiln was not satisfactory to respondent and that the latter acted in good faith in rejecting it. On this issue the evidence of the inadequacy of the kiln was so clear that there can be no question but that respondent's dissatisfaction was reasonable and well founded. Under such circumstances respondent was entitled to reject the work done. (*Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700 [182 Pac. 428, 6 A. L. R. 1493]; *Thos. Haverty Co.* v. *Jones*, 185 Cal. 285, 296 [197 Pac. 105].) Appellant might concede as well that its principal failed to reimburse the supply company for its expense for labor and materials, as there is no evidence to the contrary. These failures render appellant liable on its bond without reference to the guaranties.

▇ The second defense is based on the condition in the bond, which reads: "That the plans and specifications mentioned in said contract are not in any respect defective, and are and at all times will be kept adequate for the complete performance of such contract, . . . " The appellant's con-

tention that the specifications were defective is answered by the respondent's statement that there was no defect in the equipment or mechanics of the kiln, but rather in Goss' theory—which is not listed among the "specifications". But there is no evidence and no finding that the plans or the specifications were defective or inadequate, hence the point is not material to any question raised here.

The third defense concerns a condition in the bond that, in case of default, notice should be sent to the surety's office in Newark, New Jersey. The notice of default was sent to the San Francisco office. But the supply company had been conducting the business with the San Francisco office and the latter took care of the entire matter with no reference to the New Jersey office. If the condition was material to any right of the surety it was waived by its conduct.

As a fourth defense appellant argues that notice was not given it within ten days of the default, as required by the bond. The first testing of the kiln was completed on June 8th and the first notice was sent August 19th. Thus, it contends, the default occurred in the middle of June and the supply company then gave Goss a two months' extension of time without appellant's consent. But respondent argues that the default was not made until August and that the surety knew of the extension of time. The extension was an act done for the benefit of the surety and its consent may be implied.

Appellant's fifth defense is that the suit was not brought within the time required by the bond and the sixth that process was not served on it within the required time. This contention is based on that part of the bond which provides that no suit shall be brought against the surety company unless brought and process served within six months after completion of the contract. Appellant then argues that the contract was completed on June 2, 1929, while the suit was not started until December 3, 1929 (one day late) and summons not served until July 9, 1930. But, since the contract was never completed, the following condition controls: " . . . and in any event within 12 months from the date fixed in said contract for completion; . . . " The finding that the contract was not completed is a sufficient answer to the point.

In its seventh defense appellant argues that, since the first kiln had been completed according to specifications on

May 29th and the changes made after that time were not required by the contract, Goss must have rendered consideration for the extension of time and that the surety was for this reason exonerated. But the trial court found there was no completion, and, as the only changes made were in an effort to make the kiln satisfactory—as provided for in the contract —they were not for a new consideration.

The eighth defense claims that since a couple of changes were made in the contract after the bond was written, the surety cannot be held. But the bond was issued on the original draft. The surety company, without the knowledge or consent of respondent, then retyped the contract and in so doing made two changes which were not satisfactory to the contracting parties. The only changes made by the supply company and Goss after this time were to make the contract read in effect as it had read in the original draft. These changes were not material, as they were a difference in description rather than in kind, and they did not in any manner affect the surety.

In its ninth defense appellant argues that since the bond was an indemnity bond, plaintiff could only collect if other agencies had been paid to satisfy the guaranties. But it was admitted that satisfactory performance was impossible and the amount sued for was the cost of labor and materials put out by the supply company.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1935.